We will now hear argument in the final case of the day, which is Feinberg v. United States. While everybody's getting ready, I want to make certain I have this down. Mr. Manch, you have seven minutes, is that right? Eric Manch That's correct, Judge. Judge Prado And then I gather that Ms. Bond is going to be doing the rebuttal, and we'll have three minutes, is that right? Eric Manch That's correct, Judge. Judge Prado That's very well. Okay, Mr. Manch, please proceed. Eric Manch Yes, thank you. Please, the Court, Counsel, good morning. My name is Eric Manch. I represent Mr. Feinberg, and Judge Prado Can you get close to the microphone, Mr. Manch? Eric Manch Yes, of course, sir. So, I'd like to get straight to the issue that I'd like to spend the most time on, and that has to do with an issue that was brought up in the government's brief, and that has to do with the issue of whether, as the government argues, the argument that we have raised in our appellant brief regarding, with respect to the restitution, the restitution hearing should be dismissed pursuant to the government's argument in Manrique v. United States Supreme Court opinion in 2017. We would argue specifically that this case, for a number of reasons, is distinguishable, the most prominent of which is actually brought up in the government's own answering brief, which Manrique has to do with an amendment judgment, first of all. And our brief, our — the order which our — which we find most objectionable in our case has to do with an order. We think this is significant for a number of reasons, which goes to the court of our — yes. When we get to Manrique, I want to be sure we're confining the appeal to what I understand it's supposed to be. I understand your Rule 29 motion, as you presented it to the trial court, only challenged whether the government had presented sufficient evidence that the defendants intended to defraud their victims. Do you agree that's the only issue before us on appeal? Correct, Judge. Okay. Thank you. So, as well as we're also arguing the restitution issue specifically, we brought that up in our brief as well. Well, that's my point. Yes. I'm not sure that's before us. Okay. Well, of course, our argument is that that was probably brief, and that was, of course, there's no argument as to whether the appeal itself, the notice of appeal was timely, but the argument being raised by the government is whether the appeal issue with respect to the restitution was — should be dismissed. So — Well, you've argued that Manrique is distinguishable. What is the authority that supports your idea that you can have a subsequent substantive order and you don't have to file a separate notice of appeal? Well, again, this goes to the core of the issue in our case, which is the restitution hearing, there was no amended order in our case. So the judge could, in this case, there was never an amended judgment setting the — ordering this substantial restitution order of $4,925,134.79 in this case. Well, that's true. You have no reason to argue that we should deal with it. If the Court just talked about restitution but never actually ordered it, then why are we even talking about it? Because — and I'll point the Court to Justice Ginsburg's dissent, which I think makes some important distinctions in her own dissent, which points out there was no opportunity for the district judge in this case to make any sort of advisory under Rule 32J that the defendant, defense counsel, had to file a proper notice of appeal. There was no opportunity for that to be done. There was no proper order — again, judgment, what would the proper protocol to be — to happen in this particular case for counsel to simply wait and for a proper amended judgment to happen that wouldn't have ever come in this case? Because, again, it simply never happened. It was never — it didn't happen in this case because, again, the issue simply was that there was never any restitution hearing conducting in the first place. In fact, in the judgment that was appealed — There was a restitution hearing. My understanding is that your client just didn't show up. Did — was his counsel there? In fact, if you look at the transcript, his counsel was there. And, in fact, if you look at what the government actually did, the government actually did not want to proceed with the hearing at that time. The government actually asked for a warrant for both defendants and proposed that a status conference be set in 90 days. If you look at the judgment commitment order, the judgment commitment order says that the restitution amount was to be determined and says that the restitution was to be set in December of 2022. So there was no subsequent order entered. There was simply an order entering the amount written by the district court judge entering the amount, and there was no testimony taken. There was no additional — But what about that order being entered and Manrique being applicable law? What's the excuse for not appealing from that order? Because, again, our contention is there was — there was no — the problem becomes there was no proper advisory made. There was no opportunity made because there was no separate — there was no separate judgment to appeal from, is the problem. There was — if there — if there was an opportunity to be made, there's simply there was one order to appeal from. And so it's distinguishable for that simple reason. Let me ask you this. I know you're trying to distinguish the case. Yes. But if the court is unable to distinguish Manrique, then you would agree, I gather, that your appeal on the restitution order is not before us. Is that fair? If we can't do that. If there is no distinction, well, it's a Supreme Court case, and — but we obviously would argue that it is distinguishable because it's —  We feel differently about it. But if you find, after considering your arguments, that basically you didn't appeal that, we don't have any basis to consider it, right, under Manrique? Again, our position is that this is a wholly different case because the order — I understand that. — is — that's being appealed from is this initial judgment, which was entered in November of 2022. Simply put, there was never — now, if, hypothetically speaking, the district court entered an amended judgment, which was contemplated in Manrique, then we would have a different situation. Thank you. Now, your time is up. Let me ask my colleagues whether either has additional questions. I have a question. I'm not sure if you're alluding to this, but it seems in your comments you're alluding to Justice Ginsburg's dissent. Dissent, yes, correct. Yes, where she said that Manrique was not advised of the right to appeal, and the government conceded that that was necessary. Correct. So how does — if that's — it's in the dissent, but if the government there conceded that the district court was required to advise the defendant of the right to appeal, and that didn't happen here? It did not. So what does that mean? So you think that means that the — we should apply Manrique as a claims processing rule and conclude that you have an appeal? Yes. Well, yes. Again, if Manrique is controlling, then the district court should have to advise defendants of their right of appeal after a — and that was not done here. That was not done here. And the defendant, neither defendant, was advised of their right of appeal. So that would — so there becomes a whole other issue of — What happens in a different sort of case, if it's not a case involving deferred restitution judgment, if it's just another criminal case and judgment is entered and, you know, there's sentencing and the district court doesn't advise the defendant of the right to appeal? Well, it's a violation of Rule 32. If they have a right — if they have a right of appeal, the defendant is not properly advised. How would that come into play as a practical matter if their appeal was untimely? Would they get some relief from that because they weren't advised of their right to appeal? Yes, they would. Other questions? All right. Thank you, counsel. All right. Thank you. All right. Let's hear from the government. Mr. — is it Manti? Is that the way you say it? He's back. He was here. You're back. There we are. Good morning again, Your Honors. May it please the Court, my name is Corey Manti and I'm representing the United States from the Tucson U.S. Attorney's Office. This Court should affirm the defendant's jury trial convictions and the district court's restitution order. There was sufficient evidence of the defendant's guilt on those security and wire fraud convictions. Also, the defendant's challenge to the district court's restitution order is not reviewable under Supreme Court precedent. But even if it is, the defendant has failed to show any plain error in how the district court issued its restitution order. Starting with the first point, there was sufficient and indeed overwhelming evidence of guilt in this case, including of the defendant's fraudulent intent, which is the focus of this defendant's Rule 29 motion. The evidence showed for well over a decade the defendant systematically defrauded approximately 150 victim investors of nearly $5 million by convincing them to buy company stock, promising enormous investment returns that were never received, making promises about their V-Delta software, and promises about enormous investment returns and even charitable donations that they did not make. However, the victims never received a cent of an investment return from their investments. Many of these victims lived in the same town as the defendants and were part of their synagogue, their social circles, and clubs. The defendant's victims include their barber and even their office manager. There were numerous badges of fraud in this case, as cases like Lothian show. For instance, the evidence of fraud included the defendant's various representations made to the victim investors. These misrepresentations appeared in the company's publications, in addition to their presentations and face-to-face conversations with the victims. The defendant sold their company stock by promising significant investment returns, reaching hundreds if not thousands of percent returns and gains. Investors never received any money back, any investment return. They also touted the company's imminent release of the V-Delta software and the imminent release of dividends to the victims. However, none of these circumstances ever occurred. And they also embellished and touted their revolutionary capabilities of their V-Delta software. But their own programmers testified that the features that were promised were not ready in the software. And indeed, the software was never released. And finally, Your Honors, the defendant, among other evidence, the defendants also improperly used the victim's monies, which is also highly probative evidence of their intent to defraud. They drew victims' money from their bank accounts and used them to pay for personal expenses like massages and restaurant bills. The FBI accountant testified and showed the jury how the defendants had used certain money to pay their bills and their mortgage. So... Can you turn to the restitution issue? Absolutely, Your Honor. In terms of the... I'm sorry. So, I mean, you heard our questions to your friend on the other side. So, it looks like Judge Soto sentenced the defendants, entered the judgment on November 15, 2022. And then on December 13, 2022, had a restitution hearing. The defendants were not present. He entered an order for restitution. Your friend says that there was no advisement of the right to appeal the restitution order. Do you dispute that or agree with that? I agree with that, Your Honor. So, what are the consequences for failing to advise them of the right to appeal? Or do you think it was even required? I would say that the dissent in Manrique suggests that it's required. However, the majority decision obviously still ordered the dismissal of the appeal. And as Your Honor pointed out, in the underlying proceedings, the district court also failed to advise of the appeal rights from the restitution order. So, in terms of that, in Manrique, as on all fours on this case, the defendants were obligated to appeal from this final order. They didn't. They only appealed the final judgment from the sentence earlier, as Your Honor mentioned. So, we would argue that Manrique controls in this case, and that dismissal of this portion of the appeal is mandatory. I would also say, though, Your Honor, if the court chooses to review the merits of the restitution order, there is no plain error, let alone any error. The district court relied on uncontroverted evidence in the record, including the FBI accountant's summary of the victim's losses. The district court properly based its restitution order on the victim's actual losses as the Mandatory Victims Restitution Act required. At the restitution hearing, which was held, the defendants had an opportunity to present any contrary evidence or argument disputing the restitution award, the amounts, and so forth. There's no objection to any of the calculations. There's no objection to the restitution order. The district court entered that order with no objection, without objection. The district court wasn't required to conduct a more, take further steps to order the restitution, where this wasn't a case where anything was actually in dispute. I gather that the defendants were represented at the restitution hearing, right? There's just no objection. That's absolutely correct, Your Honor. At the sentencing, in fact, the earlier sentencing, the defendants were advised of the date of the restitution hearing. They did not show, and one of the defense attorneys basically said that they had communicated with their clients and that the Feinbergs weren't going to appear because they were packing up their place. The district court then chose to proceed with sentencing, finding that they had voluntarily absented themselves. And on appeal, there's no objection to that course. There's no dispute that that was finding. From the government's perspective, even if we were able to review the restitution order, notwithstanding Monrique, they didn't object. It's uncontroverted. Correct. Your Honor, there couldn't have been error, let alone plain error, when the district court was relying on uncontroverted evidence from trial, sentencing, and the restitution hearing. Again, the defendants had an opportunity, and through defense counsel, to present any contrary evidence or arguments. They failed to do so, and certainly the district court did not err, let alone plain error, in issuing that restitution order. If the court has no further questions. Other questions? I think not. I'll simply close that we would respectfully request that this court affirm the defendant's convictions for money laundering, referring to my previous case, securities fraud and wire fraud, and also affirm the district court's restitution order. Thank you very much. Very well. Ms. Bond, you have three minutes of rebuttal. Thank you, Your Honors. And just for the record, I am Stephanie Bond, and I represent specifically Betsy Feinberg in this case. Your Honor, in looking at the Rule 29 issue, I'd ask the court to focus on the fact that this was a functioning company. Granted, it was not run very well. It didn't do what the defendants believed that it could do. But this was a functioning company. They had offices. They had employees. The employees testified. As this court has stated, the office manager, who you would assume would know of the progress of everything and what was going on in the company, she was a victim in this case because she was given stock as a part of her employment. She didn't ring any bells about there being any issues in this company. We had several employees. The Feinbergs themselves were also employees of this company. With respect, I gather you're making a sufficiency of the evidence argument. Given the overwhelming evidence presented by the government with all these victims, a lot of people in the synagogue, friends and so on, the luxurious lifestyle that the Feinbergs had, is there any really serious argument that you can make about sufficiency of the evidence under Jackson? Judge, the best argument that I have is the fact that they were not living a lavish lifestyle. I think that was overblown in the trial because if you look at the actual testimony of Betsy Feinberg, she's driving a 22-year-old car. She's going to her normal hairdresser that she's gone to for all these years. There's nothing lavish about it. They're taking people out to employees for businesses, type meetings, all those kinds of things, and they're going to pizza places and bar and grills. They're not going to some lavish steakhouse spending all this lavish money. The money was actually pretty reasonable when you think about it, the money that they were spending. The government is saying, well, they were spending all this money on their health care. Well, that was part of the company's health care that all the employees, them as employees, were able to take advantage of. So that's really the sufficiency of the evidence argument is the fact that these aren't people that came in, took people's money, and left. They lived in this area. They continued to go to see the hairdresser, who was also an investor. Their office manager continued employment with them, who was also an investor. Everybody at their synagogue was also investors. They continued to go there for years and years and years. Your time is up. Other questions about my colleague? All right. Thank you. Thank you, counsel, for your argument. The case just argued is submitted, and the court stands adjourned for the day.
judges: SMITH, BADE, FORREST